# McCaleb v. Goodwin & Swift.

*Bill in Equity to set aside Foreclosure of Trust Deed.*

1. *Estoppel by stockholder to question the validity of trust deed of corporation.*—A stockholder, who owns all the stock of a corporation and consents to and procures the issuance of bonds by said corporation, the benefit of which he received and which were to be and were secured by trust deed upon the corporate assets, is estopped in equity to question the validity of such a deed, or to avoid the bonds secured thereby ; and a purchaser from such stockholder is likewise estopped.

2. *Impairment of security for debt; right of purchaser at foreclosure.*
Although the beneficiaries in a trust deed may maintain an action for
whatever injury they suffer by wrongful impairment of their secu-
rity, the purchaser at foreclosure sale becomes invested with no such
right, since he acquires no interest whatever in the debt secured.

3. *Same; same; case at bar.*—The Mobile Street Railway Company,
being the owner of all the capital stock of the Mobile & Spring Hill
Railroad Company, procured as such stockholder, the issuance of
bonds secured by a trust deed, upon all the corporate assets of the
latter corporation, the proceeds of some of which, at least, were
used in the improvement of the latter's property. Subsequently such
deed was foreclosed, Goodwin & Swift becoming the purchasers at the
foreclosure sale. Previous to such bond issue, the Mobile Street Rail-
way Company had given a trust deed to secure its bonds upon all its
assets including the stock in the Mobile & Spring Hill Railroad Com-
pany. The latter trust deed was also foreclosed, McCaleb becoming
the purchaser of the stock in the Mobile & Spring Hill Railroad Com-
pany at the foreclosure sale. Upon a bill filed by McCaleb to set
aside the foreclosure of the trust deed of the Mobile & Spring Hill
Railroad Company, and to declare the same invalid and to cancel the
bonds issued by said company, it is held that complainant is estopped
to deny the validity of the trust deed, and further, that the fact that
complainant purchased at the foreclosure sale did not make him
privy in estate with the bondholders, so as to give the bill equity,
since he did not thereby succeed to the rights of the bondholders in
the debt secured, but only acquired the property purchased, (BRICKELL,
C. J. and HARALSON, J. concurring). McCLELLAN and HEAD, J J.,
concurring in the conclusion as to the want of equity in the bill, rest
their decision upon the ground that the bill was without equity, be-
cause the complainant did not offer to do equity by re-imbursing the
Mobile Street Railway Company the amount expended by it upon
the Mobile & Spring Hill Railroad Company from the proceeds of its
bonds, at least, to the extent of the enhancement of the value
thereof, in which conclusion BRICKELL, C. J. and HARALSON, J. also
concur.

4. *Ownership of all of the corporate stock by single individual; right
to enforce relief without applying to corporation; quære.*—Even should
the ownership of all of the capital stock of a corporation by a single
individual, not work a dissolution of the corporation, whether such
individual, in the absence of extraordinary and urgent emergency, can
maintain a suit in a matter affecting the corporate entity, without
calling upon the corporation to institute the necessary legal pro-
ceedings,—*Quære?*

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. WILLIAM H. TAYLOE.
The bill in this case was filed by the appellants
against the appellees. The purpose for which the bill

was filed, and the facts of the case are sufficiently stated in the opinion.

On the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainant was not entitled to the relief prayed for, and ordered the bill dismissed.

From this decree the complainant appeals, and assigns the rendition thereof as error.

GREGORY L. & H. T. SMITH, for appellant.—1. If the bonds are shown to have been void, or even voidable between the original parties, then the burden of showing that they had passed into the hands of *bona fide* purchasers for value and before maturity, is, upon the defendants.—*Morton, Bliss & Co. v. N. O. & S. R. Co.*, 79 Ala. 618 ; *Johnson v. Hanover National Bank*, 88 Ala. 274. If the bonds were hypothecated to secure pre-existing debts, the holders did not thereby become *bona fide* purchasers for value.—*Reid v. Bank of Mobile*, 70 Ala. 199 ; *Haden v. Lehman*, 83 Ala. 245.

2. Had any person other than the Mobile Street Railway Company held any of the stock of the Mobile & Spring Hill Railroad Company at the time these bonds were issued, there could be no doubt but that he could have enjoined the execution of the bonds and of the deed of trust by which they were secured, or could have had them set aside and declared void after they had been issued.—*Memphis & Charleston R. R. Co. v. Woods*, 88 Ala. 630 ; *George v. Central R. R. & B. Co.*, 101 Ala. 607.

3. Before the deed of trust was made, the Mobile Street Railway Company had the general right to vote this stock, but it did not then have the right to vote it in favor of a contract to be made for its own benefit. By the deed of trust, this right to vote the stock generally for all legal purposes, was retained, but the right to vote it for illegal purposes was not conferred. In short, the Mobile Street Railway Company was authorized by the deed of trust to act through the voting power of its stock on behalf of the bondholders, as well as itself, in all general matters of interest to the company, but when one person authorizes another to act for him generally, he does not thereby authorize him to deal with the subject of the agency for his own benefit. No man can, without express and unequivocal authority, act as the

agent of another in selling or mortgaging the property of that other, to, or for, the benefit of himself. In the case at bar, the corporation, through its president, Mr. R. K. Warren, had accepted service of process in a suit commenced to foreclose the deed of trust, and had allowed a decree *pro confesso* to be taken against it, and could not, therefore, have filed this bill in its own name. Under these circumstances, the bill could be filed by a part of the stockholders in its own name.—*M. & C. R. R. Co. v. Woods*, 88 Ala. 631; *George v. C. R. R. & B. Co.*, 101 Ala. 607; *Mack v. DeBardeleben C. & I. Co.*, 90 Ala. 396; *Nathan v. Tompkins*, 82 Ala. 437.

4. It is further contended by the appellees that as complainant purchased his stock after the deed of trust had been executed, he took subject to it. Had he purchased the stock at private sale, this would have been true, but as he purchased at a judicial sale, he took all of the rights that persons holding under the deed of trust possessed, and these rights were acquired before the making of the deed of trust of the Mobile & Spring Hill Railroad Company, and could not be affected by it. *Millis v. Lombard*, 32 Minn. 259, s. c. 20 N. W. Rep. 187; Freeman on Executions, § 333; *Smith v. Cockrell*, 66 Ala. 70; *Reed v. Smith*, 14 Ala. 380; *Teague v. Martin*, 87 Ala. 500.

BESTOR & GRAY, *contra.*—1. The purchaser of stock in a corporation is not allowed to attack the prior acts and management of the corporation.—*United Electric Securities Co. v. Louisiana Electric Co.*, 68 Fed. Rep. 673; *Gasquet v. Fidelity Trust & Safety Vault Co.*, 75 Fed. Rep. 346; *Nelson v. Hubbard*, 96 Ala. 238; 1 Morawetz on Private Corporations, § 267, p. 346. This is the law as to a subsequent stockholder without notice. *A fortiori* when he has notice and knowledge as McCaleb had. Besides, the voting power is in the pledgor or mortgagor *Clarke v. Central R. R. Co.*, 50 Fed. Rep. 343; *M. O. R. R. Co. v. Nicholas*, 98 Ala. 116.

2. The bonds were in the usual form of negotiable bonds with interest coupons payable semi-annually, except that the principal and interest are both made payable in the city of New York, at the Hanover National Bank, or at the office of the company, in the city of Mobile, at the option of the holders. They were nego-

[McCaleb v. Goodwin & Swift.]

tiable instruments in the hands of a *bona fide* holder. *Rudulph v. Brewer*, 96 Ala. 189 ; *Boit v. Corr*, 54 Ala, 112. They were payable at a certain place named. They give the holder the option of demanding payment either at the Hanover National Bank in New York, or at the office of the company in Mobile. We construe the case of *Haden & Floyd v. Lehman, Durr & Co.*, 83 Ala. 243, in our favor, for Judge Stone says : "The intention was that a certain place should be designated, a place at which debtor and creditor could meet, the one to pay, and the other to receive payment." 83 Ala. 245. Goodwin & Swift were, therefore, *bona fide* purchasers of the bonds without notice, and as such are not charged with any irregularities (if there were any, which we deny), and hence they hold a lien superior to all outstanding equities, and certainly a lien prior to a stockholder who acquired his stock after the bonds were issued, and after such stock had been voted to place the mortgage and bonds.—*Murray v. Lardner,* 2 Wallace 110 ; *Kneeland v. Lawrence*, 140 U. S. 209 ; *McMurray v. Moran*, 134 U. S. 150 ; *Cromwell v. County of Sac*, 96 U. S. 51 ; Jones on Railroad Securities, §§ 190, 191 ; 2 Beach on Railroads, § 635 ; *Capital City Ins. Co. v. Quinn*, 73 Ala. 560. Nor does *lis pendens* apply to negotiable paper.— *Winston v. Westfeldt*, 22 Ala. 760 ; *Marshal v. Town of Elgin*, 8 Fed. Rep. 783 ; *County of Warren v. Marcy*, 97 U. S. 96 ; *Mayberry v. Morris*, 62 Ala. 117. Nor if some of the coupons are past due, does this render the bonds and other coupons not yet due non-negotiable paper—*Cromwell v. County of Sac*, 96 U. S. 51 ; Jones on Corp., Bonds and Mortgages, § 188 ; *Plock v. Cobb*, 64 Ala. 127 ; *Morton & Bliss v. New Orleans & Selma R. R. Co.*, 79 Ala. 616.

3. Before the time of the issue of the bonds and at the time they were turned over to the Mobile Street Railway Company as collateral security, the Mobile & Spring Hill Railroad Company was very heavily in debt to the Mobile Street Railway Company. Then the corporation had the right to pledge these bonds for antecedent debts of the corporation without violating the provisions of the Constitution, or of its charter.—*Nelson v. Hubbard*, 96 Ala. 238 ; *McMurray v. Moran*, 134 U. S. 158 ; *Railroad Co. v. Nat'l Bank*, 102 U. S. 14.

4. The Fidelity Trust & Safety Vault Company ac-

[McCaleb v. Goodwin & Swift.]

cepted the trust in Louisville, Kentucky. It then brought the suit to foreclose the mortgage. It carried on and transacted no business. There is then nothing in the point made in the bill that the contract was void by reason of the trustee not being *legally* competent to act by reason of its not having complied with the Constitution, Art. 14, § 4, and the Statutes of Alabama, Acts, 1886-87, p. 102.—*Christian v. Am. F. Land Co.,* 89 Ala. 198 ; *Beard v. Union Pub. Co.,* 71 Ala. 60 ; *Sullivan v. Sullivan Timber Co.,* 103 Ala. 371 ; *Sherwood v. Alvis,* 83 Ala. 115 ; *Am. Loan & Trust Co. v. E. & W. R.,* 37 Fed. Rep. 242.

COLEMAN, J. — In October, 1890, the Mobile & Spring Hill Railroad Company issued its bonds, each of the face value of one thousand dollars, to the amount of one hundred thousand dollars, and executed a deed of trust to the Fidelity Trust and Safety Vault Company upon all its assets and property, to secure the payment of the bonds. The respondents, Goodwin & Swift, became the owners of ninety-two of these bonds, being the entire amount disposed of by the Mobile & Spring Hill Railroad Company. This mortgage was foreclosed by a decree of the chancery court, and the property sold in January, 1893, at which sale Goodwin & Swift became the purchasers. The sale was duly confirmed, and the purchasers put in possession of the property.

On the 15th of August, 1887, the Mobile Street Railway company, being then the owner of all the stock of the Mobile & Spring Hill Railroad Company, consisting of one thousand shares, executed a mortgage or deed of trust to the Fidelity Trust and Safety Vault Company, upon all its property to secure its bonded indebtedness. Its stock in the Mobile & Spring Hill Railroad Company was included and conveyed in the deed of trust. The deed of trust of the Mobile Street Railway Company expressly provided that "the legal title to the stock is not to be transferred to the trustee, except in case of default in the payment of said bonds and coupons as hereinafter provided, and until said default the voting power of said stock is to remain with those who appear upon the books of said Mobile & Spring Hill Railroad Company as the legal holders thereof," &c. By a decree of the Federal court, rendered in 1893, the mortgage or trust deed of

the Mobile Street Railway Company was foreclosed and all its property sold, including the stock in the Mobile & Spring Hill Railroad Company. The complainant, Mc-Caleb, acquired title to the stock under and by virtue of the foreclosure sale. As the owner and holder of all the stock in the Mobile & Spring Hill Railroad Company, he filed the present bill, by which he seeks a rescission and cancellation of the bonds issued by the Mobile & Spring Hill Railroad Company and the deed of trust executed to secure them, and to set aside and annul the decree of foreclosure and sale of the property by virtue of the decree. The validity of the bonds and trust deed is assailed upon several grounds.

The pleadings and evidence, with all reasonable satisfaction, justify the following conclusions: That the bonds of the Mobile & Spring Hill Railroad Company, and the deed of trust to secure them, were authorized and directed to be issued and executed by virtue of the vote of the very stock subsequently purchased and now owned by complainant and upon which his bill is founded. As has been stated, all this stock belonged to the Mobile Street Railway Company. It stood on the books of the Mobile & Spring Hill Railroad Company in other names, but the fact is uncontroverted that it belonged to and was voted as directed by the Mobile Street Railway Company. It is not materially controverted, that these bonds were turned over to the Mobile Street Railway Company as collateral security to a debt past due from the Mobile & Spring Hill Railroad Company to the stockholders of the Mobile Street Railway Company, and were used by it. For the argument it is conceded, that the Mobile Street Railway Company used its ownership of the stock in directing the issue of the bonds and the execution of the deed of trust wholly for its own purposes and benefit, and thereby greatly impaired the value of the stock. If all this be true, upon what equitable doctrine will the stockholder, who thus used his power to reduce the value of his own stock in one corporation in order to promote the interest of, and benefit, another corporation, be allowed, after reaping the advantages from the bonds and deed of trust virtually executed by him, to assail the validity of his own acts, to the injury and loss of the purchasers from him of these bonds? We have not the case of a minority stockholder

[McCaleb v. Goodwin & Swift.]

seeking relief against a majority of the stockholders, or against the corporation itself dominated by a majority of stockholders to the wrong and injury of the minority; but the case is that of all the stockholders, seeking relief against their own acts, after reaping a benefit from them. There can be no justice or equity in such a claim.

The appellant contends, however, that when he purchased the stock at the foreclosure sale, he acquired it, freed from all such disabilities and infirmities, and attempts to support this claim in the following way. At the time the stock was used by direction of the Mobile Street Railway Company, for the purpose of having the bonds of the Mobile & Spring Hill Railroad Company issued, the stock had been pledged by the Mobile Street Railway Company for the benefit of its own bondholders, and that it had no authority to impair by its own wrongful action the security conveyed in the deed of trust. As the bondholders were interested in the value of the stock, and as the debtor could not lawfully impair the security as against the bondholders, the complainant by his purchase of the stock became "a privy in estate" with the bondholders, and succeeded to their interest in the stock. There is no connection between the premise and conclusion of the argument. In equity the mortgagor was the absolute owner of the stock except as against the mortgagee, and the absolute owner against him, except as to the security for the debt. If the security for the debt had remained ample to satisfy the debt, the bondholders could have had no grounds of complaint; or if the mortgagor had made good to the bondholders the damages, if any were wrongfully inflicted, there would be no cause of action. The bondholders might have enjoined the commission of the wrong, or probably, if the wrong was committed against their consent, and there had been no waiver of the right, they might have maintained an action for damages for the impairment of their security. This right grows out of their relation as the owners of the debt secured. It does not exist independent of the debt, but only as a security for the debt. By his purchase of the stock, the complainant acquired no interest in the secured debt. He purchased the stock and obtained a perfect title to it. No one questions his absolute ownership of the stock, and he obtained everything that he intended to purchase.—*Webber v. Ramsey*, 43 Am. St.

Rep. 429 and note; *Knoll v. New York, Chicago &c. R. Co.*, 1 L. R. A. 366 and note; *Betz v. Verner*, 7 L. R. A. 630 and note; *Gibson v. R. & D. R. R. Co.*, 2 L. R. A. 467.

If there had been a disposition by sale or mortgage of the stock by the debtor mortgagor, which was fraudulent and void as against the creditor mortgagee, affecting the title thereto, the authorities cited by appellant, would be pertinent in a suit against the fraudulent grantee. This principle does not arise under the facts of this case.

Assuming that the ownership of all the stock of a corporation by a single individual does not work a dissolution of the corporation, can it be said, in the absence of extraordinary and urgent emergency, that the stockholder is relieved from applying to the corporation to institute all legal proceedings in a matter affecting the corporation as an entity?

There are many interesting questions discussed in the written argument of counsel, but the principles of law declared by us as applicable to the case, render it unnecessary to discuss them.

The CHIEF JUSTICE and Associate Justice HARALSON concur in this conclusion. Justices McCLELLAN and HEAD concur in the conclusion that the bill should be dismissed, but prefer to rest their decision upon the same ground, upon which the chancellor dismissed the bill, namely, that complainant must do equity, in reimbursing the Mobile Street Railway Company for the money expended by it, at least so far as the property of the Mobile & Spring Hill Railroad Company was enhanced in value thereby; and the CHIEF JUSTICE and Justice HARALSON concur in the conclusion also, that in any event, the complainant must do equity in this respect, before he can obtain the relief sought by his bill.

Affirmed.